**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re:<br><br>ANDY MONPLAISIR and<br>COLEEN MONPLAISIR,<br><br>                                       Debtors. | FOR PUBLICATION<br><br>Chapter 7<br><br>Case No. 24-12033 (MG) |
|---|---|

**MEMORANDUM OPINION AND ORDER DENYING**
**DEBTORS' MOTION TO CONVERT CHAPTER 7 CASE**

*A P P E A R A N C E S:*

LAW OFFICES OF JEFFREY WEINSTEIN, P.C.
*Attorney for Andy Monplaisir and Coleen Monplaisir*
225 Broadway, Suite 3800
New York, NY 10007
By:    Jeffrey L. Weinstein, Esq.

LAMONICA HERBST & MANISCALCO, LLP
*Attorney for Salvatore LaMonica, as Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, NY 11793
By:    Gary F. Herbst, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the contested motion (the "Motion to Convert," ECF Doc. # 51) of Andy Monplaisir ("Andy") and Coleen Monplaisir ("Coleen" and, together with Andy, the "Debtors") for entry of an order severing their joint Chapter 7 case into separate cases, converting Andy's Chapter 7 case to one under Chapter 13, and allowing Coleen's case to proceed under Chapter 7. Annexed to the Motion to Convert is the declaration of Andy and Coleen (the "Monplaisir Decl.," ECF Doc. # 51) in support of the Motion to Convert.

The Motion to Convert was filed on May 8, 2025. (*See* Motion to Convert.) On May 22, 2025, Salvatore LaMonica, the Chapter 7 Trustee (the "Trustee"), filed an opposition to the Motion to Convert ("Opposition," ECF Doc. # 52), contending that Andy's debt exceeds the statutory cap for Chapter 13 eligibility set forth in section 109(e) of the United States Code (the "Bankruptcy Code"). A hearing on the Motion to Convert was held on June 16, 2025. The Trustee's counsel appeared the hearing and argued; Debtor's counsel, who filed the Motion to Convert, failed to appear at the hearing.

For the reasons discussed, the Court **DENIES** the Motion to Convert.

## I.    BACKGROUND

### A. The Debtor's Case

On November 25, 2024, the Debtors filed a voluntary joint Chapter 7 petition (the "Petition," ECF Doc. # 1.) The Debtors commenced this case pro se; since April 29, 2025, the Debtors have been represented by Jeffrey L. Weinstein, Esq. (Consent to Change Attorney, ECF Doc. # 49.)

In their schedules, the Debtors listed $1,165,556.18[1] in unsecured debt, $797,000.00 in debt secured by a single-family home located at 5 Cherry Drive, Townhouse 1, Kingston, Jamaica ("Jamaica Property") valued at $750,000.00, and a vehicle valued at $45,000.00. (Petition at 29, 43.)

The Petition showed a combined monthly income of $3,173 and monthly expenses of $16,968.00, for a net monthly income of −$13,795.00. (*Id.* at 15.) The Debtors have one dependent, a 3-year-old daughter. (*Id.* at 50.) On November 25, 2024, Salvatore LaMonica was appointed as the Chapter 7 Trustee. (*See generally* Docket.)

---

[1]    Note the inconsistency in the unsecured debt from totaling the claim amounts from the Claims Register. (*See infra* Table 1.)

2

The Debtors claimed an exemption ("Homestead Exemption") in the Jamaica Property pursuant to section 5206 of the New York Civil Practice Law and Rules ("CPLR"). (*Id.* at 27). The Trustee objected to the Homestead Exemption on the grounds that section 5206 of the CPLR requires a showing that (1) the property at issue is the debtor's principal residence and (2) the property is located within New York State to qualify for the exemption; the Jamaica Property meets neither of these requirements. The Court sustained the Trustee's objection on February 7, 2025. (*See* ECF Doc. # 22.)

At a prior section 341 meeting of creditors, the Debtors informed the Trustee that Jamaica Money Market Brokers ("JMMB"), a creditor of the estates that holds a mortgage against the Jamaica Property, was proceeding with a foreclosure sale of the mortgage on the Jamaica Property. (*See* Motion to Enforce the Automatic Stay, ECF Doc. #23.) Shortly thereafter, the Debtors provided a copy of the newspaper notice and online listing showing that the Jamaica Property had been put up for an auction sale and was scheduled to be sold on February 27, 2025. (*Id.*) The Trustee then advised JMMB, by letter, of the automatic stay and demanded that the foreclosure sale be discontinued. After several more attempts via letter and e-mail, which received no response, and via telephone, in which JMMB representatives indicated that JMMB intends to proceed with the foreclosure auction despite the automatic stay, the Trustee filed a motion on February 7, 2025, requesting the Court to enforce the automatic stay, direct JMMB to immediately discontinue the foreclosure sale of the Jamaica Property, and award damages and sanctions against JMMB for willful violation of the automatic stay pursuant to sections 105 and 362 of the Bankruptcy Code. In a stipulation entered into on February 14, 2025 (the "Stipulation," ECF Doc. # 29), the Trustee and JMMB stipulated that the foreclosure sale of

3

the Jamaica Property has been cancelled, and the Trustee withdrew his motion to enforce the automatic stay.

On March 13, 2025, the Trustee filed a motion ("Motion to Sell Property Free and Clear of Liens Under Section 363(f)," ECF Doc. # 34) seeking authorization to sell the Jamaica Property. The Court granted the Trustee's motion on March 19, 2025. (*See* Order Re: Motion To Sell Property Free And Clear Of Liens Under Section 363(f), ECF Doc. # 40.)

### B. The Motion for Conversion to a Chapter 13 Case

The Debtors filed the Motion to Convert on May 8, 2025, because of a change in employment circumstances. (*See* Motion to Convert.) Both Debtors were unemployed when the Chapter 7 Petition was filed. (*See id.* at 49.) The $3,173 combined monthly income stated on the Petition consists of $2016 from Andy's unemployment compensation and $1157 in regular government assistance. (*See id.*) The Debtors indicated on the Petition that Andy expected to be employed within the next year (*see* Petition at 49), and indeed, Andy became employed at an annual salary in excess of $437,000.00 per year and now believes he has sufficient income to support a Chapter 13 plan. (*See* Motion to Convert at 5.) To allow time to convert the case to a Chapter 13 case and prepare a Chapter 13 plan, the Debtors, in their Motion to Convert, also request a 45-day extension of the automatic stay, protecting the Jamaica Property from foreclosure. (*See id.*)

### C. The Trustee's Opposition to the Motion to Convert to a Chapter 13 Case

The Trustee opposes the Motion to Convert on the grounds that neither of the Debtors, jointly or individually, qualifies as an eligible Chapter 13 debtor because the Debtors' noncontingent, liquidated, unsecured debts, jointly and individually, exceed the statutory cap.

4

(*See* Opposition at 2, 4.) For the same reasons, the Trustee indicates that the 45-day extension of the automatic stay should not be granted. (*See id.* at 5.)

## II.    LEGAL STANDARD

**A. Severing a Joint Chapter 7 Case**

The Bankruptcy Code permits joint petitions under section 302(a) for the procedural purpose of allowing married couples to avoid the expense of paying two filing fees and the inconvenience of filing two separate petitions. 11 U.S.C. § 302(a). While section 302 does not expressly address severance of a joint petition, courts have interpreted the language of section 302(b), which gives courts the authority to determine "the extent, if any, to which the debtors' estates shall be consolidated," as giving courts the discretion to sever a joint case where appropriate. 11 U.S.C. § 302(b). *See In re Seligman*, 417 B.R. 171 (Bankr. E.D.N.Y. 2009); *see also In re Shjeflo*, 383 B.R. 192, 195 (Bankr. N.D. Okla. 2008).

Courts have exercised their discretion to sever a joint case when a debtor has sought severance due to a change in marital status. *See Seligman*, 417 B.R. 171 (granting recently separated debtors' motion to sever their joint Chapter 13 case to allow debtor-wife to convert her case to one under Chapter 7); *see also In re Estrada*, 224 B.R. 132 (Bankr. S.D. Cal. 1998) (allowing debtor-wife to sever her joint Chapter 7 case and convert her case to one under Chapter 13 after debtor-husband's death); *see also Shjeflo*, 383 B.R. 192 (allowing debtor-wife to sever her case from her joint Chapter 13 case with debtor-husband, with whom she was in divorce proceedings.) In such cases, the fact that debts and assets are already being disentangled in family court proceedings lends support to the practicality of allowing the debtors' joint bankruptcy case to be severed. *See Shjeflo*, 383 B.R. at 197 (the lack of evidence in the record suggesting that deconsolidation would be unworkable or present a hardship upon either debtor or

5

the appointed trustee weighed in favor of granting severance); *see also In re Willis*, No. 2:12-bk-25173-NB, 2015 Bankr. LEXIS 2857, at 5–6 (Bankr. C.D. Cal. Aug. 25, 2015) ("[I]f the proposed division of assets and liabilities is fair and equitable then the bifurcation will be permitted, because forcing divorcing spouses to maintain a joint case would impose an undue hardship on them, and ultimately might negatively impact their ability to get on with their lives and maximize creditors' recoveries.").

Beyond joint cases where severance has been granted due to a change of marital status, joint cases have been severed because the debtors were improperly joined. *See In re Wilkerson*, No. 05-54096 (JDW), 2006 WL 3694638 (Bankr. M.D. Ga. Mar. 29, 2006) (concluding the appropriate remedy for an erroneously filed joint Chapter 7 case by unmarried debtors was severance). However, severance is not the exclusive remedy for an improperly filed petition. When severance of the petition would be administratively difficult, some courts have exercised their discretion and deemed it appropriate to drop one of the debtors from the petition pursuant to FED. R. BANKR. P. 7021. *See In re Rodriguez Alzugaray*, 606 B.R. 159 (Bankr. D.P.R. 2019) (denying severance of the joint case because it would be difficult to administer two petitions separately in light of the community property belonging to both debtors).

A change in marital status or an erroneously filed joint case creates a strong rationale for separating the joint bankruptcy case. In the absence of these circumstances, particularly when there is evidence that severance is being used in bad faith, such as to avoid an unfavorable ruling or hinder creditors, courts have declined to exercise any discretion to sever a joint case. *See In re Saunders*, No. 06-22149, 2007 WL 1464430 (Bankr. W.D.N.Y. May 18, 2007) (denying severance of a joint Chapter 7 case as a means to get around binding case law that would allow the cash value of a whole life insurance policy owned by one spouse and naming the other as a

6

beneficiary to be used to pay off the beneficiary spouse's creditors); *see also In re Ross*, 21 B.R. 5 (Bankr. E.D.N.Y. 1982) (holding that the discovery of assets that render debtor-wife solvent is not sufficient cause to allow her to sever off and withdraw her petition from her joint case with debtor-husband and if anything, is grounds for retaining the joint case because creditors are now assured of "an equitable and full distribution of the debtor's newly discovered assets"); *see also In re Watson*, No. AP 12-80006, 2012 WL 2120530 (Bankr. N.D. Ala. June 11, 2012) (denying debtor-wife's motion to sever her joint Chapter 13 case after inheriting one-third interest in the estate of her deceased mother because the debtor-wife "failed to disclose the inheritance from her mother until the Trustee conducted a 2004 examination, and because the Debtors allowed this bankruptcy case to be confirmed with each debt being listed as jointly owed, and the case to be administered as a joint case for over three years").

### B. Eligibility to Convert a Chapter 7 Case to Another Chapter

If the Court chooses to exercise its discretion to sever a joint case, the Court must next address whether such case is eligible for conversion. The governing law for conversion of a Chapter 7 case is set forth in section 706 of the Bankruptcy Code, which provides in relevant part:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> [ . . . ]
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. §§ 706(a), (d). Thus, section 706 provides a debtor with the right to convert a Chapter 7 case to a case under Chapter 11, 12, or 13, subject to two limitations: (1) the case has not

7

previously been converted from another chapter and (2) the debtor is an eligible debtor under the chapter they are seeking conversion to. *Id.*

### C. Chapter 13 Eligibility

A debtor who seeks to convert a Chapter 7 case to a Chapter 13 case must meet the basic requirements of "who may be a debtor" in a Chapter 13 case under 11 U.S.C. § 109(e), which states:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $526,700 [previously "$465,275," adjusted effective April, 1, 2025] and noncontingent, liquidated, secured debts of less than $1,580,125 [previously "$1,395,875," adjusted effective April 1, 2025], or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $526,700 [previously "$465,275," adjusted effective April, 1, 2025] and noncontingent, liquidated, secured debts of less than $1,580,125 [previously "$1,395,875," adjusted effective April 1, 2025] may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).

Section 109(e) thus restricts debtors with debts in excess of the prescribed unsecured and secured debt limits and debtors who are not individuals with "regular income" from converting their Chapter 7 case to a case under Chapter 13. 11 U.S.C. § 109(e). Section 101(30) defines "regular income" as income that is "sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker." 11 U.S.C. § 101(30). However, courts have read into section 101(30) an implied condition that a debtor have some income in excess of expenses to make some showing that the debtor will be able to make payments under an eventually confirmed Chapter 13 plan. *See In re Durov*, No. 16-71699, 2017 WL 977026, at *7 (Bankr. C.D. Ill. Mar. 10, 2017).

8

**D. Dividing Joint Debts for Purposes of Determining Chapter 13 Eligibility**

Section 109(e) of the Bankruptcy Code provides for two categories of eligible debtors under Chapter 13: (1) an individual with regular income who meets the debt limits, or (2) an individual with regular income and such individual's spouse, except for stockbrokers or commodity brokers, together owing debts under those same limits. By its plain language, the first category governs individual petitions filed by debtors, whereas the second category applies to joint petitions filed by spouses. Thus, where spouses file separate Chapter 13 petitions, eligibility is assessed individually under the first category.

The issue, then, is whether joint debts should be counted in full against each spouse when they file separate cases, and if not, how those joint debts should be allocated for eligibility purposes. For purposes of determining Chapter 13 eligibility, courts have counted joint debts in full against each debtor in their separate cases. *See In re Cronkleton*, 18 B.R. 792, 793 (Bankr. S.D. Ohio 1982) (rejecting married debtors' argument that they are only liable for a pro rata share of their joint debts because the attempted splitting of an obligation for which debtors are jointly liable in order to qualify under the debt limitation ceiling in 109(e) is not permissible); *see also In re Marchetto*, 24 B.R. 967 (B.A.P. 1st Cir. Mass. 1982) (counting the joint obligation of a husband and wife on a mortgage in full for Chapter 13 eligibility purposes in the debtor wife's individual case, thus rendering her ineligible for Chapter 13.)

**E. Discretionary Power to Deny Chapter 13 Conversion and Other Considerations**

Even when the statutory conditions of sections 109(e) and 101(30) have been satisfied, the Court nonetheless has discretionary power, exercised sparingly in the Second Circuit, to deny conversion. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373–74 (2007) (ruling that the right to convert a case under section 706(a) is not absolute); *see also In re*

9

*Marcakis*, 254 B.R. 77 (Bankr. E.D.N.Y. 2000) (finding that Congress's choice of the permissive "may" rather than the mandatory "shall" in section 706(a) supports the conclusion that the statute does not confer an absolute right to conversion); *but see In re Krishnaya*, 263 B.R. 63, 69 (Bankr. S.D.N.Y. 2001) (noting that the discretionary power to deny conversion should be exercised sparingly).

In determining when to exercise such discretion, courts have considered the following factors:

1. whether there exist extreme circumstances constituting bad faith;
2. whether the debtor can propose a confirmable Chapter 13 plan;
3. the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion;
4. the effect of conversion on the efficient administration of the bankruptcy estate; and
5. whether conversion would further an abuse of the bankruptcy process.

*See In re Shankman*, 382 B.R. 591, 597 (Bankr. E.D.N.Y. 2008); *see also In re Pakuris*, 262 B.R. at 335–36 (Bankr. E.D. Pa. 2001).

### III.    DISCUSSION

The Court has discretion in determining whether the severance of Andy and Coleen's joint Chapter 7 case should be granted. However, whether the Court should exercise its discretion to sever the case need not be decided, because even if the joint case were severed, Andy's debt exceeds the Chapter 13 debt limits, and he would thus be ineligible to convert his Chapter 7 case to one under Chapter 13. Accordingly, the Motion to Convert is **DENIED**.

### A. The Court May Exercise Discretion to Sever the Joint Chapter 7 Case Only If The Debtor is Eligible

Courts have interpreted section 302(b) of the Bankruptcy Code, which governs joint cases, as giving courts the discretion to determine whether a joint case should be severed. *See Seligman*, 417 B.R. 171; *see also Shjeflo*, 383 B.R. 192.

The Debtors' collective noncontingent, liquidated, unsecured debts total $1,090,436.49[2]. Accordingly, if the Debtors attempted to convert their joint Chapter 7 case to a joint Chapter 13 case, their debts would exceed the statutory limit to be eligible Chapter 13 debtors. Thus, in an attempt to overcome the statutory cap and save the Jamaica Property from foreclosure, Andy is seeking to sever his case from the Debtors' joint Chapter 7 case and convert his severed case to a Chapter 13 case due to a recent change in employment and a salary he believes sufficient to fund a Chapter 13 plan.

Severance based on a substantial increase in income is consistent with cases involving severance following post-petition discovery of assets, such as *Ross* and *Watson*. *See Ross*, 21 B.R. 5.; *see also Watson*, 2012 WL 2120530. However, unlike *Ross*, where the debtor sought severance and dismissal after becoming solvent due to inherited funds, Andy is not seeking to withdraw his case, but to convert it in light of his new financial circumstances. In *Ross*, allowing severance and dismissal could have left creditors without recourse, but here, Andy's creditors would still be paid through a Chapter 13 plan if Andy's case is severed and converted. This case is also unlike *Watson*, where the debtor had attempted to conceal her newly acquired assets, because Andy had not attempted to conceal his change in employment. On the contrary, he filed

---

[2] This is the total from the Claims Register. Note that this total is different from the total set forth in the Opposition. (*See* Opposition.)

11

this Motion to Convert in response to it.  There is, therefore, no indicia of bad faith that would warrant denying severance of Andy and Coleen's joint case.

At the same time, this case does not fall squarely within the line of cases where severance has been permitted.  A change in marital status or an improperly filed joint petition are circumstances in which separating the joint bankruptcy case is clearly warranted.  Neither of those factors is present here, thus, it is unclear whether Andy's change in employment alone provides sufficient grounds for the Court to exercise its discretion to sever the joint case.  The Court, however, need not decide this question, because even if the case were severed, Andy would be unable to convert his case to a Chapter 13 case due to his debts exceeding the statutory limits to be an eligible debtor under Chapter 13.

### B. Andy is Ineligible for Chapter 13 Because His Debt Exceeds the Debt Limit

If Andy and Coleen's joint case were severed, Andy must meet two requirements for his severed Chapter 7 case to be converted to a Chapter 13 case pursuant to section 706 of the Bankruptcy Code: (i) the no-previous-conversion requirement and (ii) the eligible-Chapter-13-debtor requirement.  11 U.S.C. §§ 706(a), (d).  Since the Debtors have not previously converted their case (*see generally* Docket), the dispositive issue is whether Andy meets the criteria to be an eligible debtor under Chapter 13.

To be eligible for Chapter 13, the Debtor must (1) have less than $465,275 in noncontingent, liquidated, unsecured debts and less than $1,395,875 in noncontingent, liquidated, secured debts (the statutory limits in effect at the time of filing of the petition), and (2) have income "sufficiently stable and regular to enable [her] to make payments" under a Chapter 13 plan.  11 U.S.C. §§ 109(e), 101(30).

12

The Debtors rely on the argument that due to a change in employment status, Andy now has sufficient income to fund a Chapter 13 plan. While this may help Andy meet the regular income requirement for Chapter 13 eligibility, it does not overcome the fact that his debts are in excess of the noncontingent, liquidated, unsecured debt limit. Andy's secured debts, on the other hand, total $797,000, which is well below the noncontingent, liquidated, secured debt limit. (Petition at 29.)

The Trustee, in totaling Andy's noncontingent, liquidated, unsecured debt, counts Andy and Coleen's joint debts toward Andy's total debt, in which case Andy's noncontingent, liquidated, unsecured debt would amount to $487,934.77, thus exceeding the statutory cap to be an eligible Chapter 13 debtor.

The case law weighs in favor of adopting the Trustee's method of counting joint debts in full toward Andy's total debt for purposes of determining Chapter 13 eligibility under section 109(e). *See Cronkleton*, 18 B.R. at 793; *see also Marchetto*, 24 B.R. at 967. Therefore, because Andy's noncontingent, liquidated, unsecured debt totals $487,934.77, exceeding the debt limit of $465,275.00 under section 109(e) of the Bankruptcy Code, Andy does not meet the requirements to be an eligible Chapter 13 debtor. Accordingly, the Court **DENIES** the Motion to Convert.

## IV. CONCLUSION

For the foregoing reasons, the Debtors' Motion to Convert this joint Chapter 7 case to one under Chapter 13 of the Bankruptcy Code is **DENIED**.

**IT IS SO ORDERED.**

Dated:   June 16, 2025
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge