**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

ANDY MONPLAISIR and
COLEEN MONPLAISIR,

Debtors.

NOT FOR PUBLICATION

Chapter 7

Case No. 24-12033 (MG)

## MEMORANDUM OPINION AND ORDER

*A P P E A R A N C E S :*

LAW OFFICES OF JEFFREY WEINSTEIN, P.C.
*Attorney for Andy Monplaisir and Coleen Monplaisir*
225 Broadway, Suite 3800
New York, NY 10007
By:    Jeffrey L. Weinstein, Esq.

LAMONICA HERBST & MANISCALCO, LLP
*Attorney for Salvatore LaMonica, as Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, NY 11793
By:    Gary F. Herbst, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion ("Motion to Reconsider," ECF Doc. # 55) of

Andy Monplaisir ("Andy") and Coleen Monplaisir ("Coleen" and, together with Andy, the

"Debtors") for reconsideration of the Debtors' motion to sever their joint case and convert

Andy's hypothetically severed Chapter 7 case to a Chapter 13 case ("Motion to Convert," ECF

Doc. # 51.)  The Motion to Convert was filed on May 8, 2025.  On May 22, 2025, Salvatore

LaMonica, the Chapter 7 Trustee (the "Trustee"), filed an opposition to the Motion to Convert

(ECF Doc. #52), contending that Andy's debt exceeds the statutory cap for Chapter 13 eligibility

set forth in section 109(e) of the Bankruptcy Code.  A hearing on the Motion to Convert

("Hearing") was held on June 16, 2025.  The Trustee's counsel appeared at the hearing and

argued; Debtor's counsel, who filed the Motion to Convert, failed to appear at the hearing.  On

June 16, 2025, the Court entered a Memorandum Opinion and Order denying the Debtors'

Motion to Convert because Andy's debt exceeds the statutory cap for Chapter 13 eligibility.  (*See*

"Written Opinion," ECF Doc. # 54.)

The Debtors filed the Motion for Reconsideration on June 16, 2025, asserting that one of

the debts is a duplicate, and if the duplicate debt is removed, Andy's debts do not exceed the

statutory cap, making Andy eligible for Chapter 13.  (*See* Motion for Reconsideration.)  On June

30, 2025, the Trustee filed an opposition ("Opposition," ECF Doc. # 56) to the Motion for

Reconsideration.  The Debtors filed a reply (the "Reply," ECF Doc. # 58) to the Opposition.

For the reasons set forth below, the Court will hold the Motion for Reconsideration in

abeyance for 14 days from the date of the entry of this opinion and order while the Debtors (1)

either get one of the creditors to consensually withdraw the alleged duplicate claim or file a

properly-supported objection to the claim and (2) provide proof of employment, demonstrating

that Andy has regular and stable income to fund a Chapter 13 plan.  If the Debtors meet their

burden of proving, by a preponderance of the evidence, the existence of a regular and stable

income to qualify for Chapter 13 relief under 11 U.S.C. § 109(e) and succeed in eliminating the

alleged duplicate claim, the Court will at that time take up the Motion for Reconsideration and

will address the question whether to sever Andy's and Coleen's joint chapter 7 case.  If the

alleged duplicate claim is not voluntarily withdrawn, the Debtors may file a claim objection

within 14 days; the Court will shorten the time to respond to the objection to seven days.  If a

response is filed within this period, the Debtors shall have three days to file a reply.  Once

briefing is complete, the Court will either decide the claim objection on the papers or set the

matter for hearing.  During this time, the Motion for Reconsideration will continue to be held in abeyance pending the Court's ruling on the claim objection.

The Court **DENIES** the additional relief requested by the Debtors in their Reply, discussed below.

## I.    <u>BACKGROUND</u>

### A.  The Debtor's Case

On November 25, 2024, the Debtors filed a voluntary joint Chapter 7 petition (the "Petition," ECF Doc. # 1.)  The Debtors commenced this case *pro se*; since April 29, 2025, the Debtors have been represented by Jeffrey L. Weinstein, Esq.  (*See* ECF Doc. # 49.)  In their schedules, the Debtors listed $1,165,556.181 in unsecured debt, $797,000.00 in debt secured by a single-family home located at 5 Cherry Drive, Townhouse 1, Kingston, Jamaica ("Jamaica Property") valued at $750,000.00, and a vehicle valued at $45,000.00.  (Petition at 17, 18.)

At a prior section 341 meeting of creditors, the Debtors informed the Trustee that Jamaica Money Market Brokers ("JMMB"), a creditor of the estates that holds a mortgage against the Jamaica Property, was proceeding with a foreclosure sale of the mortgage on the Jamaica Property.  (*See* "Motion to Enforce the Automatic Stay," ECF Doc. #23, ¶ 13.)  Shortly thereafter, the Debtors provided a copy of the newspaper notice and online listing showing that the Jamaica Property had been put up for an auction sale and was scheduled to be sold on February 27, 2025.  (*Id.* ¶ 14.)  The Trustee then advised JMMB, by letter, of the automatic stay and demanded that the foreclosure sale be discontinued.  (*Id.* ¶ 15.)  After several more attempts via letter and e-mail, which received no response, and via telephone, in which JMMB representatives indicated that JMMB intends to proceed with the foreclosure auction despite the automatic stay, the Trustee filed a motion on February 7, 2025, requesting the Court to enforce

the automatic stay, direct JMMB to immediately discontinue the foreclosure sale of the Jamaica

Property, and award damages and sanctions against JMMB for willful violation of the automatic

stay pursuant to sections 105 and 362 of the Bankruptcy Code.  (*Id.* ¶¶ 15–22.)  In a stipulation

dated February 17, 2025 (the "Stipulation," ECF Doc. # 29), the Trustee and JMMB stipulated

that the foreclosure sale of the Jamaica Property had been cancelled, and the Trustee withdrew

his motion to enforce the automatic stay.

On March 13, 2025, the Trustee filed a motion (ECF Doc. # 34) seeking authorization to

sell the Jamaica Property.  The Court granted the Trustee's motion on March 19, 2025.  (*See*

ECF Doc. # 40.)

The Debtors filed the Motion to Convert on May 8, 2025, because of a change in

employment circumstances.  (*See* Motion to Convert.)  Both Debtors were unemployed when the

Chapter 7 Petition was filed.  (*See id.* at 5.)  The $3,173 combined monthly income stated on the

Petition consisted of $2,016 from Andy's unemployment compensation and $1,157 in regular

government assistance.  (*See* Petition at 49.)  The Debtors indicated on the Petition that Andy

expected to be employed within the next year (*see id.*) and now assert that Andy has become

employed at an annual salary in excess of $437,000.00 per year, with sufficient income to

support a Chapter 13 plan (*see* Motion to Convert at 5.)  (Evidence of Andy's new employment

and annual salary has not been provided to the Court.)

### B.  Motion for Reconsideration

The Debtors filed the Motion for Reconsideration on June 16, 2025.  The Debtors make

two points.  First, the Debtors state that the Motion to Convert was filed by John W. Reeves of

Kazmi & Reeves LLP on behalf of co-counsel Jeffrey Weinstein, who was the undersigned

counsel for the Motion to Convert.  (Motion for Reconsideration ¶ 3.)  The Debtors argue that

because Mr. Reeves did not receive an email about the Hearing, along with miscommunication between the counselors and the Debtors, counsel was unable to register and appear at the Hearing.  (*Id.* ¶¶ 3–4.)  Mr. Reeves states that he tried to join the Hearing at 2:00 pm when it was scheduled, but by the time he was able to reach court staff, the Hearing was over.  (*Id.* ¶ 4.)

The second point that the Debtors make is that the Motion for Reconsideration should be granted because the Motion to Convert has strong merit.  (*Id.* ¶ 5.)  The Debtors discovered that one of debts is a duplication because two of the creditors listed, National Credit Systems, Inc. (claim 19-1) and 42nd and 10th Associates LLC (claim 20-1), are one and the same company. The Debtors argue that claim 19-1 and claim 20-1, each of which is for $46,898.49, are duplicates.  (*Id.* ¶ 6.)  Removing the duplicate debt, Andy's total debt would be $441,036.77, which is below the statutory limit of $465,275 (of unsecured debt).  (*Id.*)  The Debtors did not offer proof of this assertion in their Motion.  The claim register, however, indicates that there may be some truth to Andy's assertion.  Claims nos. 19-1 (filed by National Credit Systems, Inc.) and 20-1 (filed by 42nd and 10th Associates LLC) are for the exact same amount ($46,898.49) and both attach what appears to be identical leases in support (*see* claim no. 19-1 at 6, no. 20-1 at 5).  National Credit Systems indicates on its claim (19-1) that it acquired the claim from another entity, specifically, "MIMA/related."  (Claim no. 19-1 at 1.)

### C.  Opposition

The Trustee filed the Opposition on June 30, 2025.  In his Opposition, the Trustee argues that (1) the Debtors had ample opportunity to submit a reply to the Trustee's objection to the Motion to Convert to address the duplicate debts; (2) the Debtors have failed to provide any admissible evidence of how they intend to fund a Chapter 13 plan; and (3) even if the Debtors provided proof of income from Andy's new job, Andy would be required to spend his income

repaying the cost of the debts of the case, the Trustee's administrative expenses and costs, and
Chapter 13 fees, which the Trustee estimates to total $500,000 over the life of a Chapter 13 plan;
and (4) severing the joint Chapter 7 case—which would be a necessary prerequisite to converting
Andy's case to a chapter 13—would be prejudicial to creditors because, while Andy's creditors
would be paid over the course of a Chapter 13 plan, Coleen's creditors would realize nothing
from a sale of the Jamaica Property.  (*Id.* ¶¶ 1–3.)

### D.  Reply to the Opposition

On July 7, 2025, the Debtors filed the Reply *pro se*.  (*See* Reply at 1.)  In it, they argue
that without the alleged duplicate debt, Andy meets the statutory requirements for Chapter 13
eligibility which gives him an absolute right to convert his hypothetically severed case from a
Chapter 7 case to a Chapter 13 case.  (Reply at 8.)  The Debtors explain that National Credit
Systems is the collection agency representing "MIMA/42nd Associates," which is the "original
creditor."  (*Id.*)  They also attach to their Reply an email which seems to concern outstanding
maintenance payments due on the Jamaica property from an individual at JMMB Bank (*id.* at
11), and the Official Form 410 filed with claim no. 20 (*id.* at 13).

In response to the Trustee's argument that severing the joint Chapter 7 case and allowing
Coleen's case to remain in Chapter 7 would be prejudicial to Coleen's creditors, the Debtors
argue that aside from the joint interest in the Jamaica Property, Coleen's debts are primarily
unsecured debts and even if the Jamaica Property were to be sold by the Trustee, there would be
no distribution left for the unsecured creditors after the secured creditor distribution and high
transactional fees.  (*Id.* at 9.)  The Debtors also argue that the conversion would have no effect
on Coleen's significant non-dischargeable student loan and tax debts.  (*Id.*)

The Debtors do not provide any evidence of Andy's employment or otherwise address the Trustee's concerns whether Andy meets the statutory requirements under section 109(e) of the Code. They do, however, argue that Andy has an "absolute statutory right" to convert his case under section 706(a) of the Code. (*Id.* at 2, 9.) They also argue that the Trustee has functionally wound up working for JMMB Bank rather than for the Debtors' estate, and that JMMB Bank should therefore pay the trustee costs incurred by the estate. (*Id.* at 5–8).

The Debtors make the following new requests in the Reply: (1) the Jamaica Property has become burdensome to the estate and thus, the Debtors request the Trustee to abandon the property pursuant to 11 U.S.C. § 554; (2) the Debtors request that all fees and costs incurred to the estate be borne by the secured creditor, JMMB, not the Debtors; and (3) the Debtors request that they be awarded $100,000.00 from JMMB for emotional harm suffered due to JMMB violating the automatic stay, or alternatively, be awarded a loan modification that modifies the monthly payment from $4,500.00 to $2,000.00 to offset the costs inflicted by the bad faith conduct of JMMB. (*Id.* at 2–10.) No authority is provided for the requested additional relief.

## II.    LEGAL STANDARD

### A.  Motion for Reconsideration

The standard applicable to a motion for reconsideration is identical to that of a motion to alter or amend a judgment under Federal Rule of Civil Procedure ("FRCP") 59(e). *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375 (S.D.N.Y. 2007). While Rule 59(e) does not set forth specific grounds for reconsidering a judgment, "[t]he major grounds justifying reconsidering are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *In re Flatbush Square Inc.*, 508 B.R. 563, 569 (Bankr. E.D.N.Y. 2014) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,

956 F.2d 1245, 1255 (2d Cir. 1992)).  Local Bankruptcy Rule 9023-1(a) provides that a motion

for reconsideration "must set forth concisely the matters or controlling decisions which counsel

believes the Court has not considered."  BANKR. S.D.N.Y. R. 9023-1(a).  Additionally, Local

Bankruptcy Rule 9024, which makes FRCP 60 applicable in bankruptcy cases, allows parties to

seek relief from a judgment under six grounds: "(1) mistake, inadvertence, surprise, excusable

neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct; (4) the

judgment is void; (5) the judgment has been satisfied, released, discharged, or it is no longer

equitable; or (6) any other reason that justifies relief."  *In re: Residential Capital, LLC*, No. 12-

12020 (MG), 2015 WL 1636440, at *4 (Bankr. S.D.N.Y. Apr. 10, 2015) (internal quotations

omitted) (citing FED. R. CIV. P. 60(b)).

### B.  Duplicate Claims

Pursuant to Rule 3007(d)(1) of the Federal Rules of Bankruptcy Procedure, a debtor may

file an objection to a claim because it is a "duplicate of other claims."  FED. R. BANKR. P.

3007(d)(1).  However, section 502(a) of the Bankruptcy Code provides:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is
> deemed allowed, unless a party in interest, including a creditor of a general partner
> in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a).  Accordingly, unless an alleged duplicate claim is withdrawn or expunged

after a claim objection is filed, it remains a claim against the debtor.

### C.  Converting a Case from Chapter 7 to Chapter 13

The governing law for conversion of a Chapter 7 case is set forth in section 706 of the

Bankruptcy Code, which provides in relevant part:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12,
> or 13 of this title at any time, if the case has not been converted under section 1112,
> 1208, or 1307 of this title. Any waiver of the right to convert a case under this
> subsection is unenforceable.

[ . . . ]

> (d) Notwithstanding any other provision of this section, a case may not be converted
> to a case under another chapter of this title unless the debtor may be a debtor under
> such chapter.

11 U.S.C. §§ 706(a), (d).  Thus, section 706 provides a debtor with the right to convert a Chapter

7 case to a case under Chapter 11, 12, or 13, subject to two limitations: (1) the case has not

previously been converted from another chapter and (2) the debtor is an eligible debtor under the

chapter they are seeking conversion to.  *Id.*

A debtor who seeks to convert a Chapter 7 case to a Chapter 13 case must meet the basic

requirements of "who may be a debtor" in a Chapter 13 case under 11 U.S.C. § 109(e), which

states:

> Only an individual with regular income that owes, on the date of the filing of the
> petition, noncontingent, liquidated, unsecured debts of less than $526,700
> [previously "$465,275," adjusted effective April, 1, 2025] and noncontingent,
> liquidated, secured debts of less than $1,580,125 [previously "$1,395,875,"
> adjusted effective April 1, 2025], or an individual with regular income and such
> individual's spouse, except a stockbroker or a commodity broker, that owe, on the
> date of the filing of the petition, noncontingent, liquidated, unsecured debts that
> aggregate less than $526,700 [previously "$465,275," adjusted effective April, 1,
> 2025] and noncontingent, liquidated, secured debts of less than $1,580,125
> [previously "$1,395,875," adjusted effective April 1, 2025] may be a debtor under
> chapter 13 of this title.

11 U.S.C. § 109(e).

Section 109(e) thus restricts debtors with debts in excess of the prescribed unsecured and

secured debt limits and debtors who are not individuals with "regular income" from converting

their Chapter 7 case to a case under Chapter 13.  11 U.S.C. § 109(e).  Section 101(30) defines

"individual with regular income" as one with an income that is "sufficiently stable and regular to

enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker." 11 U.S.C. § 101(30).

Courts require a debtor to establish, by a preponderance of the credible evidence, of the existence of a regular and stable income to qualify for Chapter 13 relief under 11 U.S.C. § 109(e). *See In re Sassower*, 76 B.R. 957, 961 (Bankr. S.D.N.Y. 1987) (finding the debtor's Chapter 7 case ineligible for conversion to Chapter 13 because the debtor only provided an expectation of obtaining prospective employment as evidence of a stable income); *see also In re Ali*, 666 B.R. 636, 649–51 (Bankr. E.D.N.Y. 2024) (finding that a debtor who proposed a Chapter 13 plan funded by contributions from her non-debtor spouse and family friend failed to meet her burden of establishing the existence of a regular and stable income); *In re Tucker*, 34 B.R. 257, 263 (Bankr. W.D. Okla. 1983) (determining that the debtors in their joint case did not sufficiently demonstrate an ability to fund a Chapter 13 plan because of the uncertainty of how long the debtor wife's disability payments would continue and because the debtor husband could only speak of part-time employment at his new job).

## III.    DISCUSSION

As an initial matter, the Motion for Reconsideration is timely within Bankruptcy Rule 9023's 14-day window and Rule 9024's reasonable time period.  The Motion for Reconsideration was filed on the same day that the Court entered the order on which the Debtors seek reconsideration.  (*See* Motion for Reconsideration.)

In the Motion for Reconsideration, the Debtors' counsel appears to insinuate that his failure to appear at the Hearing is the fault of the Court, because Mr. Reeves and the Debtors did not receive notification of the Hearing; it is undisputed that Weinstein, who filed the motion,

received notice of the hearing.  That is not excusable neglect nor any other grounds which justify relief.

The Debtors' second point, concerning the discovery of an alleged duplicate debt, may constitute a valid ground for relief, such as mistake or newly discovered evidence.  The Court decided the Motion to Convert based on the finding that if Andy and Coleen's joint case were severed, Andy's debt would exceed the statutory limit to convert his hypothetically severed Chapter 7 case to a Chapter 13 case.  *See In re Monplaisir*, 669 B.R. 717, 724 (Bankr. S.D.N.Y. 2025).  The Court expressly declined to address the threshold issue whether to exercise its discretion to sever Andy and Coleen's joint case, which would be a necessary prerequisite to converting Andy's hypothetically severed Chapter 7 case to a Chapter 13 case.  *See id.*  Because Andy's debt post-discovery of the alleged duplicate debt now falls below the Chapter 13 debt limits, Andy may be eligible to convert his case.  Nevertheless, a motion for reconsideration is not the proper vehicle for this Court to reduce the amount of debt currently reflected by the filings in this matter.  Other than asserting that a duplicate claim has been filed, the Debtors have not taken any action thus far to expunge one of the alleged duplicate claims.  The Court does not simply expunge one of the claims or ignore it because the Debtors assert it is a duplicate.  If claims 19-1 and 20-1 are indeed duplicates, the Debtors need to address the duplicate claims in one of the two ways: (1) by having on claim voluntarily withdrawn, or (2) filing an objection to one of the claims pursuant to Rule 3007(d)(1) of the Federal Rules of Bankruptcy Procedure.

Additionally, even if the Debtors successfully expunge one of the alleged duplicate claims, Andy, as a hypothetical individual debtor, must still meet the basic requirements of "who may be a debtor" in a Chapter 13 case under 11 U.S.C. § 109(e).  Other than an assertion of newfound employment, Andy has not provided any proof of employment, demonstrating a

regular and stable income sufficient to fund a Chapter 13 plan.  Accordingly, Andy has not met

his burden of proving, by a preponderance of the evidence, the existence of a regular and stable

income to qualify for Chapter 13 relief under 11 U.S.C. § 109(e).

Even if Andy provides proof of employment that sufficiently establishes the existence of

a regular and stable income under 11 U.S.C. § 109(e), this would still not be decisive of the

Motion to Convert.  The Debtors argue that absent any bad faith, meeting the eligibility

requirements of §109(e) of the Bankruptcy Code gives a debtor the absolute right to convert his

case from Chapter 7 to Chapter 13.  (Reply at 9.)  The Debtors' case is a joint case that must be

severed first before converting Andy's hypothetically severed Chapter 7 case to a Chapter 13

case.  Courts have interpreted the language of section 302(b), which gives courts the authority to

determine "the extent, if any, to which the debtors' estates shall be consolidated," as giving

courts the discretion to sever a joint case where appropriate.  11 U.S.C. § 302(b); *see In re*

*Seligman*, 417 B.R. 171 (Bankr. E.D.N.Y. 2009); *see also In re Shjeflo*, 383 B.R. 192, 195

(Bankr. N.D. Okla. 2008).  The Court previously declined to decide whether to exercise its

discretion to sever the case.  *See In re Monplaisir*, 669 B.R. at 724.  Therefore, if the Debtors are

able to eliminate the alleged duplicate claim and show that Andy would be an eligible Chapter 13

debtor under 11 U.S.C. § 109(e), the Court would then determine whether to sever the joint case.

At this time, the Court need not decide the question of severance, and thus also need not address

the Trustee's argument of severance being prejudicial to the creditors.

The Court will hold the Motion for Reconsideration in abeyance for 14 days from the

date of the entry of this opinion and order while the Debtors (1) either get one of the creditors to

withdraw the alleged duplicate claim or file a properly-supported objection to the claim and (2)

provide proof of employment, demonstrating that Andy has regular and stable income to fund a

Chapter 13 plan.  If the Debtors meet their burden of proving, by a preponderance of the evidence, the existence of a regular and stable income to qualify for Chapter 13 relief under section 109(e) and succeed in having one of the debt reduced to fall within the Chapter 13 eligibility limit, the Court will take up the Motion for Reconsideration and will address the question whether to sever Andy's and Coleen's joint chapter 7 case.  If the Debtors file a claim objection within 14 days, the creditors must respond to the objection within seven days; and the Debtors may file reply within three days.  During this time, the Motion for Reconsideration will continue to be held in abeyance pending the Court's ruling on the claim objection.

With respect to the additional relief that Andy now seeks, a motion for reconsideration is not a proper motion for asserting these untimely requests.  Courts have held that a motion for reconsideration should not be used as a vehicle for raising new arguments or claims not previously presented to the Court.  *See In re Richardson Foods, Inc.*, 667 B.R. 500, 515 (Bankr. S.D.N.Y. 2025); *see also Seoul Viosys Co. v. P3 Int'l Corp.*, No. 16CV06276AJNSN, 2017 WL 5897446 (S.D.N.Y. Nov. 29, 2017).  Additionally, JMMB acted properly in seeking to foreclose. In any event, Andy's new request for additional relief is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Reconsideration is held in abeyance as explained above.  The Debtors' new request for additional relief is **DENIED**.

**IT IS SO ORDERED.**

Dated:    July 21, 2025
          New York, New York

                                        *Martin Glenn*
                                        MARTIN GLENN
                                    Chief United States Bankruptcy Judge

13